IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

KRISTOPHER JOSEPH and
MICHELLE ANN KOWALSKY,

                    Plaintiffs,

        Vs.                                          No.  10-1222-SAC

STEPHENS & JOHNSON OPERATING
COMPANY and
S & J OPERATING COMPANY,

                    Defendants.


MEMORANDUM AND ORDER

        The case comes before the court on the defendants' motion for

summary judgment (Dk. 35) and the plaintiffs' motion to amend the pretrial

order (Dk. 41).  In this removal action, the plaintiffs bring a state law claim

seeking monetary damages from a sinkhole on their property caused by a

saltwater disposal well and the resulting dissolution of salt in an

underground formation.  The plaintiffs allege the defendants' negligence in

plugging the disposal well created a nuisance which materially interferes

with their property rights.  The defendants seek summary judgment arguing

the plaintiffs' claim is eliminated by the statute of repose.  The plaintiffs now

seek to amend the pretrial order and add the "peculiar"[1] Kansas trespass

cause of action relating to the subsidence of land as recognized and

_____

[1]*Strunk v. Lear Siegler, Inc.*, 844 F. Supp. 1466, 1473 (D. Kan. 1994).

discussed in *Nida v. American Rock Crusher Company*, 253 Kan. 230, 855
P.2d 81 (1993).  Both motions have been fully briefed and are ripe for
decision.

**SUMMARY JUDGMENT STANDARDS**

Rule 56 authorizes judgment without trial "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).  Substantive law
governs the elements of a given claim or defense and reveals what issues
are to be determined and what facts are material. *See Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A material fact is one which would
affect the outcome of the claim or defense under the governing law. *Id*.  If
the movant would not have the burden of proof at trial on the particular
claim or defense, then the motion must point to the absence of a genuine
issue of material fact.  Instead of disproving a claim or defense, the movant
need only show "a lack of evidence" on an essential element. *Adler v. Wal-
Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "[T]he dispute about
a material fact is 'genuine,' . . ., if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party." *Anderson*,  477 U.S. at
248.  However, "[w]here the record taken as a whole could not lead a
rational trier of fact to find for the nonmoving party, there is no 'genuine

2

issue for trial.'" *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dk. 35)**

In September of 2007, the plaintiffs received by deed a quarter section of land in Barton County, Kansas, ("plaintiffs' property) on which was located the Kowalsky 8SWDW, an oil and gas saltwater disposal well drilled in August of 1944.  The defendant S & J Operating Company ("S & J") purchased and was assigned the oil and gas lease to the plaintiffs' property that included the Kowalsky 8SWDW in April of 1985.  S & J sold and assigned this oil and gas lease to Davis Petroleum in November of 1989.

Before selling the lease, S & J decided to plug the Kowalsky 8SWDW because it failed a mechanical integrity test.  S & J's plugging efforts were complicated when large amounts of cement pumped into well failed to obtain a seal at the bottom of the well that would support the additional cement needed to plug the well.  Cotton seed hulls were pumped into the well obtaining a seal that supported the additional cement.  The Kansas Corporation Commission ("KCC") approved the plugging on October 23, 1989.

In 2005, the plaintiff Kristopher Kowalsky noticed what appeared to be settling around the area of the plugged well and spoke with his

3

neighbor who too noticed settling in the direction of the well.  At his neighbor's suggestion, the plaintiff Kowalsky spoke with Tim Dickinson, who had worked for Allied Cement and was on site when the Kowalsky 8SWDW was plugged.  Dickinson told Kowalsky of the problems experienced in plugging this well. The KCC was contacted in April of 2005, and KCC representatives inspected the property on April 18th and April 20th.  The KCC report includes the following regarding what Kowalsky told the KCC representatives:

> We also talked to Chris Kowalsky who rents the property from his mother.  Chris stated his water well has dropped 12' in the last 3 years and that his house and out buildings are all settling toward this hold. He also claims his neighbors house is settling toward this hole.  The area is in a sand dun area and also has numerous irrigation wells drilled in the proximity.  Chris also claimed the hole had dropped another foot since I had looked at the location on the 18th.  The location appeared to be the same on the 20th as it was on the 18th. Chris also stated he did not want to get L.D. Davis mad at him for he would like to go into a possible business venture with him and that is why he had not said anything earlier about the possible low spot.

(Dk. 136, Ex. 12, p. 1).  The KCC installed a monitoring point in May of 2005, and before the point was covered with water in late 2006, the "the survey point elevation had decreased .66 feet."  (Dk. 136, Ex. 13, p. 4). The sink hole has continued to expand over the years.

The plaintiff filed this suit in the Twentieth Judicial District Court of Barton County, Kansas, on January 29, 2010, and the defendants removed this action to federal court after the plaintiffs stated the amount in

controversy in their monetary demand.  The pretrial order includes the

following factual contentions of the plaintiffs:

> The plaintiffs' legal theories are that, S&J Operating Company,
> defendant Stephen and Johnson Operating Company's predecessor-in-
> interest, owned an interest in and operated a saltwater disposal well
> formerly located on plaintiffs' property.
> . . .   In 2008, in the area immediately surrounding the location
> of the previously plugged saltwater disposal well, a sinkhole became to
> develop which continues to grow and has created significant
> subsidence to plaintiffs' land and has affected their home.
> Defendants' negligent conduct in the plugging of the well has
> created a nuisance which materially interferes with plaintiffs' rights to
> the enjoyment and use of their property.

(Dk. 34, p. 3).

### Statute of Repose

By the terms of K.S.A. 60-513, actions for trespass upon real

property or for injury to the non-contractual rights of another must be filed

within two years after an action's accrual as defined hereafter:

> the causes of action listed in subsection (a) shall not be deemed to
> have accrued until the act giving rise to the cause of action first causes
> substantial injury, or, if the fact of injury is not reasonably
> ascertainable until some time after the initial act, then the period of
> limitation shall not commence until the fact of injury becomes
> reasonably ascertainable to the injured party, but in no event shall an
> action be commenced more than 10 years beyond the time of the act
> giving rise to the cause of action.

K.S.A. 60-513(b).  This statute plainly establishes a two-year statute of

limitations to eliminate "stale claims" and a ten-year statute of repose to

provide "immunity for claims."  *O'Neill v. Dunham*, 41 Kan. App. 2d 540,

543, 203 P.3d 68 (2009).  The Kansas Supreme Court has explained the

5

distinction between these two temporal requirements:

> "A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time.  It cuts off the remedy.  It is remedial and procedural.  A statue of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant.  It abolishes the cause of action after the passage of time even though the cause of action may not have yet accrued.  It is substantive."

*See v. Hartley*, 257 Kan. 813, 818, 896 P.2d 1049 (1995) (quoting *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992)).

The pretrial order reflects the plaintiffs' only claim is for private nuisance based on the allegations that the defendants' negligence in plugging the disposal saltwater caused the sinkhole that has unreasonably interfered with the plaintiffs' use and enjoyment of the land.  (Dk. 34, p. 5).  "A private nuisance is a tort related to an unlawful interference with a person's use or enjoyment of his land."  *Smith v. Kansas Gas Service Co.*, 285 Kan. 33, 47, 169 P.3d 1052, 1061 (2007) (internal quotation marks and citations omitted).  In an earlier decision, the Kansas Supreme Court provided the following context on nuisance law that is meaningful in evaluating the plaintiffs' claim:

> Nuisance is a field of tort liability rather than a type of tortious conduct.  Nuisance has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion. Professor Prosser concludes that the attempt frequently made to distinguish between nuisance and negligence, for example, is based entirely upon a mistaken emphasis based upon what the defendant has done rather than the result which has followed, and forgets completely the well-established fact that

negligence is merely one type of conduct which may give rise to a nuisance. (Prosser, Law of Torts, 4th Ed., § 87, p. 573.) In other words a nuisance may result from conduct which is intentional or negligent or conduct which falls within the principle of strict liability without fault. The point is that nuisance is a result and negligence is a cause and they cannot be distinguished otherwise.

*Culwell v. Abbott Const. Co., Inc.*, 211 Kan. 359, 364, 506 P.2d 1191, 1196

(1973).  In short, the plaintiffs are claiming the defendants' negligence

created a nuisance that materially interfered with the plaintiffs' interests in

the use and enjoyment of the affected real property.

        The critical issue in applying the statute of repose to the

plaintiff's nuisance claim is determining what constitutes "the act giving rise

to the cause of action" for purposes of K.S.A. 60-513(b).  If it is the act of

negligence alleged in the pretrial order, the plugging of the disposal well in

October of 1989, the statute of repose immunizes the defendants from suit.

The defendants cite a lengthy list of Kansas court decisions that count the

statutory period of repose from the alleged act of negligence.  These

decisions certainly have read the statute "to require a negligence action to

be brought within 10 years of the wrongful act."  *Klose v. Wood Valley*

*Racquet Club, Inc.*, 267 Kan. 164, 168, 975 P.2d 1218 (1999) (citing *Dobson*

*v. Larkin Homes, Inc.*, 251 Kan. 50, 52-53, 832 P.2d 345 (1992)).  The

plaintiffs respond by arguing "the act giving rise to the cause of action" is

the subsidence, and they rely on *Nida v. American Rock Crusher Co.*, 253

Kan. 230, 855 P.2d 81 (1993).  On a closer look, the *Nida* decision does not

7

appear to apply to the negligence legal theory advanced in the plaintiffs' nuisance claim.

The Nidas brought a trespass action for damages "when the surface of their land sank approximately 10 feet due to subsurface mining operations, which had ceased 30 years before the subsidence occurred." 253 Kan. at 230-31.  Though the Nidas filed their action within two months of the subsidence, the district court granted summary judgment finding the action was barred by the statute of repose for it was filed 25 years after the defendants' last mining activities.  The Kansas Court of Appeals reluctantly affirmed the district court, and the Kansas Supreme Court reversed.

The Nidas argued that the Court of Appeals had wrongly "failed to distinguish between the act giving rise to a negligence cause of action, ..., and the act giving rise to a trespass cause of action."  253 Kan. at 233. The Kansas Supreme Court found that *Audo v. Mining Co.*, 99 Kan. 454, 162 Pac. 355 (1917), and several other older decisions supported "the proposition that it is the subsidence rather than the excavation which constitutes the actionable wrong."  253 Kan. at 234.  The Court noted that its prior decisions were included in an annotation concerning the commencement of limitation periods on actions for the removal of lateral or subjacent support that had  recognized the following general rule:

> "The decided weight of authority is to the effect that the Statute of
> Limitations does not begin to run against a cause of action for injury to

8

> the surface by removal of the lateral or subjacent support, until some actual mischief has been done to it, regardless of when the excavating was done.  In other words, where injury to the surface results from the removal of the support, the statutory period dates from the actual injury rather than from the date of removal."

253 Kan. at 236.  The Court also reiterated that its own decision in *Sanders v. State Highway Commission*, 211 Kan. 776, syl. ¶ 2, 508 P.2d 981 (1973), had characterized in the following way an action based on the right to lateral support:

> The right to the lateral support of natural soil is absolute, unless changed by contract or statute, and the only proof necessary is that the excavating was a direct or proximate cause of the injury to the adjoining land.  Proof of negligence or intentional taking of soil is not necessary to a recovery.

253 Kan. at 236.  In short, the Court was convinced that in a trespass action for damage to surface land caused by the removal of its support does not accrue until the surface land is damaged.

The Kansas Supreme Court next considered "the reasoning and logic" used in its decisions that had applied the statute of repose "to negligence actions."  253 Kan. at 236.  The Court observed that those opinions had applied the statute of repose "in terms suited to a negligence action" and had tied the original wrongful act to what the defendant had done.  *Id*. at 238.  The Court then distinguished those cases and worked out a rationale for establishing a rule unique to trespass actions for subsidence:

> As established in *Pever*, [*v. Railway Co.*, 100 Kan. 266, 164 Pac. 159 (1917)] an action for surface collapse due to inadequate subjacent

9

support is in the nature of a trespass on real estate, an intentional tort. See Restatement (Second) of Torts, § 158 (1965). The actionable wrong is the intrusion upon the surface of the land which interfered with the right of the surface owner to exclusive possession and enjoyment of the land and which was a direct result of some act committed by the defendant. See Prosser & Keeton on Torts § 13 (5th ed. 1984). In a trespass action, the intrusion and the interference and the occurrence of damage are concurrent. The act committed by the defendant may have taken place much earlier, but there was no trespass until the surface was affected.

The theory of a negligence action differs in that the wrongful act is the act of the defendant. Once it takes place the negligence has occurred, even though the harmful consequence may not be manifest until later.

Although a negligence cause of action usually runs from an act of a defendant, a trespass action need not, and often would not, run from an act of defendant. There is no trespass until the entry is accomplished and the damage occurs (or has begun to occur, as in a case of continuing trespass). The trespass counterpart of the negligence "wrongful act" is the entry and the damage. In the present case, the entry was accomplished and the damage occurred when the surface fell.

*Dobson, Harding* [v. *K.C. Wall Products, Inc.*, 250 Kan. 655, 831 P.2d 958 (1992)], and *Admire Bank* [*& Trust v. City of Emporia*, 250 Kan. 688, 829 P.2d 578 (1992)] were negligence and product liability cases. They are distinguishable from the present case in that the "act giving rise to the cause of action" was the wrongful act of negligence or manufacturing and selling a defective or harmful product. Here, the "act giving rise to the cause of action" was the subsidence of the surface and not the mining operations. The mining of the coal was not wrongful and did not give rise to a cause of action during or upon completion of the mining of the coal. We held in *Audo* that the surface owner has an "absolute right to subjacent support unless that right has been distinctly waived." 99 Kan. at 458, 162 Pac. 344. Further, the subjacent support right entitles a surface owner to damages when injury to the surface actually occurs. Here, as in *Audo*, the subsiding of the land is the "act giving rise to the cause of action," and, since the injury to the surface was not immediately ascertainable, the statute of limitations does not begin to run until it was manifest. Thus, the action by the Nidas was not barred by K.S.A. 1992 Supp. 60-513(b).

253 Kan. at 238-39.  Thus, on a surface owner's trespass action for

subsidence, the "act giving rise to the cause of action" is "the subsiding of the land" and not the defendant's act that eventually resulted in "the entry and the damage" of the surface.  253 Kan. at 239.

The court certainly appreciates reading *Nida* to involve "a peculiar cause of action relating to subsidence of land."  *Strunk*, 844 F. Supp. at 1473.  Indeed, the Kansas Supreme Court was careful in *Nida* to characterize the tort action to sound in trespass with the wrongful action being the unlawful entry and damage that occur with the subsidence.  The Court likewise was precise in distinguishing a negligence action where the wrongful act is the defendant's breach of a duty.  253 Kan. at 238-39.  It follows then that the Kansas Supreme Court's analysis in *Nida* cannot be squared with the plaintiffs' claim alleging the defendants were negligent in plugging the salt water disposal well and thereby caused a nuisance on their land.  The plaintiffs bank their claim on a legal theory of the defendants' committing a wrongful act, the negligent plugging of the well, that occurred before any subsidence.  Just as the Supreme Court in *Nida* said, "[a]lthough a negligence cause of action usually runs from an act of a defendant, a trespass action need not, and often would not run from an act of defendant."  253 Kan. at 238-39.  Based on the negligence allegations that are directly connected to their nuisance theory, the plaintiffs' claim cannot be interpreted to assert as the wrongful act--simply the entry and damage to

11

the land's surface.  That the plaintiffs are alleging a claim for subsidence damages does not justify ignoring the particulars of what they have alleged or allowing them to modify their legal theory to match *Nida* without first obtaining leave of the court. Nor is this court inclined to expand the rationale in *Nida* to include legal theories other than trespass.  Therefore, the statute of repose entitles the defendants to summary judgment on the plaintiffs' claim for nuisance based on negligent plugging of the disposal well.

**PLAINTIFFS' MOTION TO AMEND THE PRETRIAL ORDER (Dk. 41)**

The plaintiffs seek to add a claim for trespass to the pretrial order as one of the legal theories for recovery for the subsidence damages. According to the plaintiffs, this theory "arises out of exactly the same facts, circumstances, conduct, transactions, and occurrences set forth in the Pretrial Order."  (Dk. 41, p. 1).  The plaintiffs deny any prejudice to the defendants and insist the amended claim is necessary to prevent manifest injustice by bringing their action for subsidence damages within the parameters of the Kansas law.

The court may modify a filed pretrial order "only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).  This provision is consistent with the pretrial order's purpose of superceding the pleadings and avoiding surprise at trial.  *Wilson v. Muckala*, 303 F.3d 1207, 1216 (10th Cir. 2002) The party seeking to amend the order bears the burden of proving manifest

12

injustice without the requested amendment.  *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1222 (10th Cir.), *cert. denied*, 531 U.S. 926 (2000).  "A pretrial order, which measures the dimensions of the lawsuit, both in the trial court and on appeal, may be modified 'only to prevent manifest injustice.'"  *Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1208 (10th Cir. 2002) (quoting Fed. R. Civ. P. 16(e)).  "Because the issues and defenses of the lawsuit are defined by the terms of the order, total inflexibility is undesirable."  *Id*.  A motion to amend is committed to the district court's sound discretion.  *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1236 (10th Cir. 2000).  A court is justified in denying a motion to amend as futile if the proposed claim could not withstand a motion to dismiss or fails to state a claim for relief.  *McNeal v. Zobrist*, 2006 WL 2692811 at *3 (D. Kan. 2006).

The defendants concede any prejudice from the amendment can be cured by permitting the parties to conduct needed additional discovery and by setting a new dispositive motion deadline.  The defendants, however, contend the proposed amendment should be denied on futility grounds.  Specifically, the defendants challenge that to assert such a claim the plaintiffs must allege that the dissolution of the salt formation was purposeful or substantially certain to occur by reason of the defendants' actions.  The defendants say such allegations cannot be found in the pretrial

13

order.  The defendants represent that the disposal well was intended to operate by injecting saltwater almost one-half mile beneath the salt formation.  The defendants point to the opinions of the plaintiffs' expert witnesses that water later reached the salt formation either because of ineffective plugging or corroded casing.  Finally, the defendants argue the plaintiffs mistakenly rely on *Nida* as there the mining company intentionally removed the subjacent support for the surface land and exposed themselves to liability for later subsidence whether the subsidence was intended or foreseeable.

The plaintiffs read *Nida* and the older precedent as recognizing that a surface landowner has an absolute right to lateral and subjacent support and that the landowner has an actionable claim for trespass by subsidence whether the taking of the subjacent support was intentional or negligent. The plaintiffs maintain they have always alleged that the defendants' actions in operating and plugging the well resulted in the lack of subjacent support which caused the subsidence.  The plaintiffs insist their allegations suffice to state the peculiar trespass action recognized in *Nida*.

The plaintiffs have shown that manifest injustice would occur without allowing them to add a claim of trespass by subsidence as recognized in *Nida*.  This claim certainly is based on the same allegations and arises out of the same facts, conduct, and occurrences.  The defendants

14

raise a serious question over what intentional or purposeful act by them supports this element of the trespass action[2], but the court believes the more prudent course is to permit the amended claim and then to decide that issue after it has been briefed fully in a dispositive motion along with any other appropriate issues.  The court will refer this case back to the magistrate judge to preside over the amendment of the pretrial order, any required additional discovery, and the setting of motion deadlines.

IT IS THEREFORE ORDERED that the defendants the defendants' motion for summary judgment (Dk. 35) is granted as to the nuisance claim and the plaintiffs' motion to amend the pretrial order (Dk. 41) to add a trespass by subsidence claim is granted.

---

[2]In *Nida*, the court was careful to emphasize that the mining company's operations were not wrongful and "that surface owner has an 'absolute right to subjacent support unless that right has been distinctly waived.'"  253 Kan. at 239 (quoting *Audo*, 99 Kan. at 458).  Indeed, the *Nida* decision could be read to interpret Kansas precedent as holding "'that an actionable wrong for impairment for lateral and subjacent support is not the excavation but the act of allowing the owner's land to fall.'"  253 Kan. at 232 (citations omitted).  For that matter, the Court in *Nida* quoted from its decision in *Sanders* that "the only proof necessary is that the excavating was a direct or proximate cause of the injury . . . .  Proof of negligence or intentional taking of soil is not necessary to a recovery."  253 Kan. at 236.  On their face, the plaintiffs' allegations lay out that the defendants' actions were directed at, impacted, and compromised the subjacent support of their land.  The court will reserve further discussion of this issue until it has been raised and fully briefed in a later dispositive motion.

Dated this 27th day of September, 2011, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge